**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

RONALD K. HOOKS, REGIONAL
DIRECTOR NATIONAL LABOR
RELATIONS BOARD REGION 19,

               Petitioner,

      v.

REMINGTON LODGING &
HOSPITALITY, LLC, d/b/a THE
SHERATON ANCHORAGE,

               Respondent.

Case No. 3:13-cv-00213-SLG

---

## DECISION AND ORDER ON PETITION FOR
## INJUNCTIVE RELIEF AND MOTION TO DISMISS

      Ronald K. Hooks is Regional Director of the Nineteenth Region of the National

Labor Relations Board (the "Board" or "NLRB"). Before the Court at Docket 1 is the

Petition for Injunctive Relief Pursuant to § 10(j)[1] of the National Labor Relations Act (the

"NLRA,"),[2] filed by Petitioner Regional Director Hooks for and on behalf of the Board.

Respondent Remington Lodging & Hospitality, LLC d/b/a The Sheraton Anchorage

("Remington"), which manages the Sheraton Hotel in Anchorage, Alaska (the "Hotel"),

opposed the petition, and Petitioner replied.[3]

---

[1] 29 U.S.C. § 160(j).

[2] 29 U.S.C. § 151 *et seq.*

[3] Docket 17 (Pet. Opp'n); Docket 21 (Pet. Reply).

Also before the Court at Docket 18 is Remington's motion to dismiss. Petitioner opposed the motion and Remington replied.[4] Upon the Court's request, the parties filed supplemental briefing on limited issues.[5]

The Court heard oral argument on both the petition and the motion on January 10, 2014.[6] For the following reasons, the Court will deny the motion to dismiss and will grant the petition for injunctive relief.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of allegations by UNITE-HERE, Local 878, AFL-CIO (the "Union"), the collective bargaining representative of most unionized employees at the Hotel, that Remington committed numerous unfair labor practices ("ULPs") in violation of the NLRA.[7]

This is the second time in which the Regional Director, on behalf of the Board, has requested injunctive relief from the District Court for the District of Alaska related to alleged ULPs by Remington. The Court summarizes the recent history of the dispute:

- Leading up to May 28, 2010: Remington was engaged in labor disputes with the Union in anticipation of the expiration of their collective bargaining agreement, which was set to expire in early 2009.[8] The Union filed multiple charges alleging ULPs, which were consolidated on May 28, 2010 into a complaint to initiate the administrative proceedings that the parties refer to as

---

[4] Docket 22 (MTD Opp'n); Docket 23 (MTD Reply).

[5] Docket 25 (Pet'r Supp. Br.); Docket 29 (Resp't Supp. Br.).

[6] Docket 24 (Minute Entry).

[7] *See* Docket 1 at 2, 4 ¶¶ 4, 22(c) (Pet.).

[8] *See Ahearn ex rel. NLRB v. Remington Lodging & Hospitality*, 842 F.Supp.2d 1186, 1192 (D. Alaska 2012).

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 2 of 34

*Remington I*.[9]  The Union filed additional charges of ULPs, which were later consolidated into amended complaints.[10]  (The ULPs and complaints underlying *Remington I* are not at issue in this litigation.)

- June 18, 2010: President Obama designated Lafe Solomon as Acting General Counsel for the NLRB, effective June 21, 2010.  The President nominated Solomon to permanently fill the position in January 2011 and May 2012, but Solomon was never confirmed.  Solomon served as Acting General Counsel until November 2013.[11]

- August 25, 2011: After an evidentiary hearing, Administrative Law Judge (ALJ) Gregory Meyerson issued a decision in *Remington I* (the "ALJ Meyerson Decision"), concluding that Remington had committed various ULPs.[12]

- October 11, 2011: Throughout the administrative proceedings in *Remington I*, the labor disputes between Remington and the Union continued, resulting in the Union filing additional charges of ULPs.[13]  On October 11, 2011, Acting General Counsel Solomon, on behalf of the Board, by former Regional Director Richard L. Ahearn, issued an Order Consolidating Cases and Consolidated Complaint consolidating the ULP charges filed in September 2010 and January 2011, which constitutes the original complaint in the administrative proceedings that the parties refer to as *Remington II*, the proceedings at issue here[14]  This complaint would later be revised on January 6, 2012 (the first amended complaint),[15] February 15, 2012 (the second

---

[9]  *See Ahearn ex rel. NLRB v. Remington Lodging & Hospitality LLC*, 3:11-cv-00240-TMB, Docket 1 at 2 ¶¶ 4, 7 (*Ahearn* Pet.).

[10]  *See id.* at 2-3, 7 ¶¶ 8, 11, 15, 18.

[11]  Docket 22-1 (Designation Letter, dated June 18, 2010). Solomon's tenure as Acting General Counsel ended November 4, 2013, when the new General Counsel was sworn into office.

[12]  *Remington Lodging & Hospitality, LLC d/b/a/ The Sheraton Anchorage & UNITED HERE! Local 878*, AFL-CIO, 359 NLRB No. 95, at *16 (2013) (the "ALJ Meyerson Decision"); *also available at* Docket 3-25 at 12.

[13]  Docket 1 at 2 ¶ 4 (Pet.); *see also* Dockets 3-1 through 3-5 (Pet. Ex. 1: Charge Against Employer Forms, dated July 2010 through Sept. 2012).

[14]  Docket 1 at 2-3 ¶ 7 (Pet.); *see also* Docket 3-6 (Pet. Ex. 2: Order Consol. Cases, Consol. Compl., dated Oct. 11, 2011).

[15]  Docket 1 at 3 ¶ 10 (Pet.); *see also* Docket 3-8 (Pet. Ex. 4: Am. Consol. Compl., dated Jan. 6, 2012).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 3 of 34

amended complaint),[16] and September 17, 2012 (the third amended complaint, which was orally amended on the record before ALJ McCarrick, discussed *infra*).[17]  Remington did not challenge Solomon's designation as Acting General Counsel nor his ability to issue complaints during the *Remington II* administrative proceedings.[18]

- December 9, 2011: Former Regional Director Ahearn, on behalf of the Board, filed a petition in the District Court for the District of Alaska seeking injunctive relief pursuant to § 10(j) related to the ULP charges underlying *Remington I*, as well as four of the ULP charges underlying *Remington II*.[19]  The case was assigned to Judge Timothy M. Burgess (Case No. 3:11-cv-00240-TMB).[20]

- February 2, 2012: Judge Burgess "issued a temporary injunction under Sec. 10(j) . . . ordering [Remington] to recognize and bargain with the Union; resume contract negotiations, and honor all tentative agreements reached by the parties; at the Union's request, rescind unilateral changes made in its employees' terms and conditions of employment; and post the order and read it aloud to employees" (the "Judge Burgess Injunction").[21]

- April 24, 2013: The Board issued a Decision and Order adopting, with minor modifications, ALJ Meyerson's findings in *Remington I*.[22]  The Board concluded that Remington had committed numerous ULPs, including that it violated the duty to bargain in good faith and violated NLRA sections 8(a)(1),

---

[16]  Docket 1 at 3 ¶ 13 (Pet.); *see also* Docket 3-11 (Pet. Ex. 7: 2d Am. Consol. Compl., dated Feb. 15, 2012).

[17]  Docket 1 at 3, 4 ¶¶ 15, 19 (Pet.); *see also* Docket 3-15 (Pet. Ex. 9: 3d Consol. Compl., dated Sept. 17, 2012).

[18]  *See* Docket 3-19 (Pet. Ex. 13: ALJ McCarrick Decision); Docket 3-7 at 6 (Pet. Ex. 3: Answer, dated Oct. 28, 2011); Docket 3-9 (Pet. Ex. 5: Answer to Am. Consol. Compl., dated Jan. 6, 2012); Docket 3-12 (Pet. Ex. 8a: Answer to 2d Am. Consol. Compl., dated Feb. 29, 2012); Docket 3-13 (Pet. Ex. 8b: Answer to 3d Am. Compl., dated Oct. 1, 2012); Docket 3-14 (Pet. Ex. 8c: Am. to Answer Adding New Affirmative Defenses, dated Nov. 2, 2012).

[19]  These four charges are listed in Petitioner's Briefing at Docket 25 at 7 (Pet'r Supp. Br.). There is otherwise no overlap between the charges of ULPs underlying *Remington I* and *II*.  *See* Docket 2 at 10 (Memo. in Support of Pet.).

[20]  *See* Docket 1 at 3 ¶ 9 (Pet.).

[21]  *Remington Lodging & Hospitality, LLC*, 359 NLRB No. 95, at *1 n.1 (summarizing relief granted in *Remington Lodging & Hospitality*, 842 F.Supp.2d 1186).

[22]  *Id.* at *1.

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 4 of 34

(3), (4), and (5).  The Board's decision is currently pending review by a United States Court of Appeals.[23]

- June 6, 2013: After an evidentiary hearing conducted over nineteen days between October 16 and December 14, 2012, ALJ John J. McCarrick issued a decision in *Remington II* (the "ALJ McCarrick Decision"), describing the proceedings as "yet a further chapter in [Remington's] unlawful refusal to recognize and bargain with the Union and its continuing efforts to undermine the Union".[24]  ALJ McCarrick concluded that Remington had committed numerous ULPs, including that it:

  o Violated NLRA section 8(a)(1) by maintaining and enforcing various rules in the employee handbook; interrogating employees about union activities; engaging in surveillance of employees' union activities; creating the impression that employees' union activities were under surveillance; coercing employees regarding testimony at an NLRB hearing; telling employees to remove union buttons; prohibiting off-duty employees from distributing union literature; and threatening to call the police on employees or have employees arrested because they were engaged in union activity.[25]

  o Violated NLRA section 8(a)(3) by disciplining, changing working hours, or discharging various employees.[26]  For example, Remington violated section 8(a)(3) by disciplining and discharging employee Dexter Wray; by reducing the hours of and discharging employee Elda Buezo; and by discharging employee Yanira Medrano.  Remington further violated section 8(a)(4) by discharging employees Wray and Medrano because they gave testimony to the Board in connection with ULP proceedings.[27]

  o Violated NLRA section 8(a)(5) by taking various actions unilaterally and without bargaining with the Union.[28]  For example, Remington

---

[23]  Docket 2 at 10 n.2 (Memo. in Support of Pet.).  There is some dispute concerning whether this appeal will be heard by the D.C. Circuit or Ninth Circuit Court of Appeals.  *Compare* Docket 17 at 2 n.1 (Pet. Opp'n) (appeal pending in D.C. Circuit Court of Appeals) *with* Docket 21 at 7 (Pet. Reply) (cross-filed appeals to Ninth Circuit and D.C. Circuit).

[24]  Docket 1 at 4 ¶ 20 (Pet.); Docket 3-19 at 8-9 (Pet. Ex. 13: ALJ McCarrick Decision).

[25]  *See* Docket 3-19 at 73-74 (Pet. Ex. 13: ALJ McCarrick Decision).

[26]  *See id. at* 74-75.

[27]  *See id.* at 75.

[28]  *See id.* at 75-76.

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 5 of 34

violated section 8(a)(5) by banning Union representatives, including Daniel Esparza, from the Hotel; by unilaterally eliminating employee scheduling preference sheets; by ceasing to assign work by seniority; and by unilaterally changing policies. Remington further violated section 8(a)(5) by refusing to provide the Union with information necessary for and relevant to the Union's performance of its collective bargaining duties.[29]

- July 30, 2013: The Senate confirmed the President's nominees to the Board, such that the Board then had five confirmed members.

- August 9, 2013: Remington filed exceptions to the Board concerning the ALJ McCarrick Decision in *Remington II.*[30] *Remington II* is currently pending before the Board.

- September 27, 2013: The five confirmed members of the Board unanimously authorized Acting General Counsel Solomon to institute § 10(j) injunction proceedings in federal district court concerning *Remington II.*[31]

- November 13, 2013: Regional Director Hooks, for and on behalf of the Board, filed the current § 10(j) petition for injunctive relief.[32]

- December 18, 2013: Remington filed a motion to dismiss the petition.[33] In the motion to dismiss, Remington asserts, for the first time, that the complaints underlying the *Remington II* administrative proceedings are not valid.

## DISCUSSION

The Court addresses the motion to dismiss and the petition in turn.

## I. Remington's Motion to Dismiss.

Remington moves to dismiss this action, asserting that the consolidated complaints in *Remington II* were invalid because the Board lacked a statutory quorum

---

[29] *See id.* at 76.

[30] Docket 1 at 7 ¶ 24 (Pet.).

[31] Docket 2 at 13 (Memo. in Support of Pet.); Docket 3-26 (Pet. Ex. 20: Bd. Authorization for § 10(j) Proceedings, dated Sept. 27, 2013). There is no dispute that the Board had a valid quorum at this point.

[32] Docket 1 (Pet.).

[33] Docket 18 (MTD).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 6 of 34

when the complaints issued, and because Acting General Counsel Solomon was invalidly appointed and not empowered to issue the complaints.[34]   For the following reasons, the Court finds Remington's arguments unpersuasive.

## A.    Review of a Rule 12(b)(1) Motion to Dismiss.

Under Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction.  The court should construe a plaintiff's complaint liberally, with reasonable inferences drawn in the plaintiff's favor.[35]   A precondition for filing a § 10(j) petition for injunctive relief is the issuance of an administrative complaint alleging one or more ULPs.[36]  If the petition for injunctive relief is not based upon a valid complaint, the Court lacks subject matter jurisdiction.[37]

## B.    The General Counsel has the Authority to Issue a Complaint Notwithstanding Lack of a Board Quorum.

The NLRA accords the General Counsel the "final authority" to issue an administrative complaint "on behalf of the Board" alleging unfair labor practices.  Section 3(d) of the NLRA provides this authorization:

> The General Counsel of the Board . . . shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law.[38]

---

[34]  Docket 18 at 11-21 (MTD).

[35]  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

[36]  *See* 29 U.S.C. § 160(j) ("upon issuance of a complaint," Board may file for injunctive relief).

[37]  *See id.*; *see also Hooks v. Kitsap Tenant Support Servs., Inc.*, No. C13-5470-BHS, 2013 WL 4094344, at *1 (W.D. Wash. Aug. 13, 2013).

[38]  29 U.S.C. § 153(d).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 7 of 34

In this case, "the former Acting General Counsel of the Board, on behalf of the Board, by [the] former Regional Director" issued the complaints.[39]

Remington maintains that because the General Counsel only has the statutory authority to issue complaints "on behalf of the Board," any complaint issued on behalf of the Board during a time when the Board lacked a quorum was invalid.[40] Remington directs the Court to several decisions from outside of this Circuit—*NLRB v. Enterprise Leasing Co. Southeast, LLC* (Fourth Circuit), *NLRB v. New Vista Nursing and Rehabilitation* (Third Circuit), and *Noel Canning v. NLRB* (District of Columbia) (together, the "Quorum Cases")—each of which concluded that the Board lacked a valid quorum during the relevant time and thus invalidated Board orders that were issued at that time.[41] But each of those cases held that *orders* issued by the *Board* without a quorum were invalid.[42] In contrast, this case concerns the validity of *complaints* issued by the *Acting General Counsel*, who has the independent statutory authority to issue complaints pursuant to the plain language of section 153(d).[43] Whether the Board had

---

[39] *See, e.g.,* Docket 1 at 2-3 ¶ 7 (Pet.).

[40] Docket 18 at 10 (Mot.).

[41] *See NLRB v. Enter. Leasing Co. SE, LLC*, 722 F.3d 609 (4th Cir. 2013); *NLRB v. New Vista Nursing & Rehab.*, 719 F.3d 203 (3d Cir. 2013); *Noel Canning v. NLRB*, 705 F.3d 490 (D.D.C. 2013).

[42] *See Enter. Leasing*, 722 F.3d 609 (seeking review of NLRB decision and finding that Enterprise violated NLRA); *New Vista Nursing & Rehabilitation*, 719 F.3d 203 (challenging NLRB decision granting summary judgment); *Noel Canning*, 705 F.3d 490 (challenging NLRB order). *But see Kitsap Tenant*, 2013 WL 4094344, at *1.

[43] *Compare* 29 U.S.C. § 160(b) (the Board may "designate[]" its agents to issue complaints) *and* 29 U.S.C. § 153(b) (the "Board is authorized to delegate to its regional directors" certain powers) *with* 29 U.S.C. § 153(d) (the General Counsel "shall have final authority" concerning "investigation of charges and issuance of complaints" but "shall have such other duties as the Board may prescribe or as may be provided by law"). Respondent does not reach this issue.

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 8 of 34

a quorum is not determinative of the validity of the administrative complaints issued by the Acting General Counsel pursuant to section 3(d) in this case.

   **C.     The Complaints Issued by Acting General Counsel Solomon are Enforceable.**

   In June 2010, President Obama designated Lafe Solomon as the Board's Acting General Counsel.[44]   In both January 2011 and May 2012, the President nominated Solomon to permanently fill the General Counsel position, but Solomon was not confirmed on either occasion.

   Remington asserts that even if section 3(d) confers the authority on the General Counsel to issue complaints without a Board quorum, Solomon could not act as General Counsel after his nomination and therefore he was not empowered to issue the complaints underlying *Remington II*.  As noted by Remington, there are two methods available to appoint a person to hold the General Counsel position in a temporary acting capacity: (1) pursuant to section 3(d) of the NLRA; or (2) pursuant to section 3345 of the Federal Vacancies Reform Act of 1998 ("FVRA").[45]   Petitioner asserts that Solomon was validly designated under section 3345(a)(3) of the FVRA, and does not argue that section 3(d) of the NLRA is applicable in this regard.[46]   The Court thus turns to the FVRA.

---

*See* Docket 18 at 11 (MTD) ("The question as to whether Acting General Counsel Solomon had such power cannot be reached because . . . Solomon was never validly appointed to the position of Acting General Counsel.").

[44]  Docket 22 at 9 (MTD Opp'n).

[45]  Docket 18 at 11 (MTD).

[46]  Section 3(d) of the NLRA provides that the President may designate a person to act as General Counsel, but "for no more than forty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate."  29 U.S.C. § 153(d).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 9 of 34

### 1.  Federal Vacancies Reform Act (5 U.S.C. § 3345).

Section 3345 is a statute that is applicable to virtually all federal government agencies, including the NLRB.  It provides for three ways to temporarily fill the position of an executive officer whose appointment is required to be made by the President with consent of the Senate when the person who held that office dies, resigns, or is otherwise unable to perform his duties.  First, section 3345(a)(1) provides that the first assistant "shall" temporarily perform the duties (i.e., automatic temporary succession).  Second, section 3345(a)(2) provides that "notwithstanding" subsection 3345(a)(1), the President "may" temporarily designate a person to fill the vacant office who otherwise held an office to which he was appointed with consent of the Senate.  Or third, section 3345(a)(3) provides that "notwithstanding" subsection 3345(a)(1), the President "may" temporarily designate a person to fill the vacant office if during the 365 days preceding the vacancy, that person served in a position in the agency for not less than 90 days and at a pay grade of at least a GS-15 or its equivalent.[47]  The Board asserts that Solomon was named Acting General Counsel pursuant to section 3345(a)(3), and Remington does not dispute that Solomon satisfied the requirements of that subsection.[48]

However, Remington asserts that when Solomon was nominated to the General Counsel position, his temporary appointment became invalid pursuant to section 3345(b)(1), which provides:

---

[47]  5 U.S.C. § 3345(a)(3).

[48]  Docket 22 at 7, 9-10 (MTD Opp'n); Docket 18 at 14 (MTD).

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 10 of 34

(b)(1) Notwithstanding subsection (a)(1), a person may not serve as an acting officer for an office under this section, if—

(A) during the 365-day period preceding the date of the death, resignation, or beginning of inability to serve, such person—

(i) did not serve in the position of first assistant to the office of such officer; or

(ii) served in the position of first assistant to the office of such officer for less than 90 days; and

(B) the President submits a nomination of such person to the Senate for appointment to such office.

There is no dispute that Solomon never served as first assistant to the General Counsel ((b)(1)(A)). And the parties agree that the President submitted Solomon's name to the Senate for appointment to the General Counsel position in January 2011 and May 2012 ((b)(1)(B)). The complaints here were all issued after Solomon's first nomination. Nevertheless, Petitioner asserts that subsection (b)(1)'s service limitations do not apply to Solomon's appointment because the "notwithstanding subsection (a)(1)" language at the beginning of subsection (b)(1) means that the (b)(1) service limitations apply only to acting officers designated pursuant to subsection (a)(1), and not to acting officers serving under subsections (a)(2) or (3).[49] Petitioner makes several arguments.

First, Petitioner asserts that the purpose of subsection (a)(3) was to "enlarge the pool of potential acting officers," and that it would "undermine Congress's stated goal of expanding the pool of potential acting officials beyond first assistants if subsection (b)(1) were construed, as Respondent construes it, to disqualify Senate-confirmed officials and other senior agency officials who have been nominated to fill the vacancy unless

_____

[49] Docket 22 at 11-12 (MTD Opp'n).

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 11 of 34

those officials had also served as first assistants."[50]  But subsection (b)(1) does not require that all acting officers served as first assistants.  In fact, at oral argument, Remington conceded that Solomon was initially eligible to serve as Acting General Counsel.  It was only when he was nominated for the office that he lost that eligibility. Thus, the statute's goal of expanding the pool of acting officers is met regardless of the scope of subsection (b)(1)'s restrictions.

Petitioner also asserts that (b)(1)'s service limitations were intended to apply only to subsection (a)(1) because "[i]f Congress had meant for the service limitation in subsection (b)(1) to apply to all three categories of officials identified in subsection (a), rather than just to first assistants, it would have said 'notwithstanding subsection (a)' rather than referring more specifically and exclusively to subsection (a)(1)."[51]  The Court disagrees.  The "notwithstanding" language of subsection (b)(1) references subsection (a)(1) because that subsection provides for automatic succession of first assistants, while subsections (a)(2) and (3) permit the President to make a discretionary appointment "notwithstanding" subsection (a)(1).  In addition, Petitioner's argument that subsection (b)(1) applies only to (a)(1) must fail because, as Remington indicates,[52] section 3345(b)(1)(A)(i) would have no meaning if it only applied to subsection (a)(1).[53]

---

[50]  *Id.* at 8-9, 11-12.

[51]  *Id.* at 11.

[52]  Docket 18 at 19 (MTD).

[53]   *Cf. United States v. Kuok*, 671 F.3d 931, 943 (9th Cir. 2012) ("To avoid interpreting one phrase so as to render another superfluous, we accept the government's interpretation of the statute.").

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 12 of 34

Furthermore, the Court finds persuasive Remington's observation that subsection (b)(1) states that "[n]otwithstanding *subsection* (a)(1), a person may not serve as an acting officer for an office under *this section* if" he also satisfies subsections (b)(1)(A) and (B).  Thus, the statute clearly distinguishes between when it intends to reference a particular subsection (e.g., the reference to "subsection (a)(1)") versus the entire section (e.g., the reference to "this section," referring to the totality of section 3345).[54] Accordingly, this Court concludes that the statute, by its terms, requires that the limitations of subsection (b)(1) apply to all of section 3345(a).

Petitioner's reference to legislative history does not require a contrary conclusion. Petitioner directs the Court to a statement by Senator Fred Thompson, which supports Petitioner's analysis of section 3345: At a hearing on the FVRA, Senator Thompson asserted that "under § 3345(b)(1), the revised reference to § 3345(a)(1) means that this subsection applies only when the acting officer is the first assistant, and not when the acting officer is designated by the President pursuant to §§ 3345(a)(2) or 3345(a)(3)."[55] But the Court will not rely upon this legislative history because the language of the statute is clear.[56]   In addition, shortly after Senator Thompson's comment, Senator Robert Byrd clarified that subsection (b)(1)'s limitations would apply to all of subsection

---

[54]  5 U.S.C. § 3345(b)(1) (emphasis added).

[55]  Docket 22 at 11-12 (MTD Opp'n) (quoting Cong. Rec., 105th Cong., 2d Sess. (Oct. 21, 1998) at 27496).

[56]  *See Church of Scientology of Cal. v. U.S. Dep't of Justice*, 612 F.2d 417, 421 (9th Cir. 1979) ("[I]f the language of a statute is clear and there is no ambiguity, then there is no need to 'interpret' the language by resorting to the legislative history or other extrinsic aids.").

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 13 of 34

(a).[57]   But the Supreme Court has cautioned courts against "allowing ambiguous legislative history to muddy clear statutory language."[58]   The Court relies instead on clear statutory language.

Because Solomon meets the criteria of both subsections (b)(1)(A) and (B) in that he did not serve as first assistant and was nominated by the President, he was not eligible under section 3345 to serve as Acting General Counsel after he was nominated for the position.

## 2. Federal Vacancies Reform Act (5 U.S.C. § 3348) and the *De Facto* Officer Doctrine.

Section 3348(d) provides that actions taken by a person not validly acting under section 3345 (or other sections not relevant to this discussion) "shall have no force or effect" and "may not be ratified."[59]   However, critical to this case, section 3348(e) specifically exempts the Board's General Counsel from this penalty provision.[60] Petitioner asserts that while section 3348(d) generally eliminates a defense like the *de facto* officer doctrine, section 3348(e) allows the NLRB to raise that defense to defend the validity of acts taken by an invalidly serving Acting General Counsel.[61]

---

[57]  *See* Cong. Rec., 105th Cong., 2d Sess. (Oct. 21, 1998), at 27496.

[58]  *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1266 (2011); *Church of Scientology of California v. U.S. Dep't. of Justice*, 612 F.2d 417, 422 (9th Cir. 1979)  ("The proper function of legislative history is to solve, not create, an ambiguity." (internal citations and quotations omitted)).

[59]  5 U.S.C. § 3348(d).

[60]  *Id.* § 3348(e) ("This section shall not apply to . . . the General Counsel of the National Labor Relations Board.").

[61]  Docket 18 at 20-21 (MTD) ("Congress, by exempting the General Counsel's office from the penalty provisions of §3348(d), has simply permitted the NLRB to raise the defense of the *de facto* officer doctrine, while stripping that defense from other offices not so exempted."); Docket 25 at 3 (Pet'r Supp. Br.) ("Because the General Counsel of the NLRB is expressly exempted

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 14 of 34

The Ninth Circuit has questioned the "continued vitality of the *de facto* officer doctrine" to ratify actions taken by invalidly serving officers.[62]  But the Supreme Court recognized the doctrine as recently as 2003 in *Nguyen v. United States*.[63]  "The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient."[64]  The doctrine "prevents litigants from abiding the outcome of a lawsuit and then overturning it if adverse upon a technicality of which they were previously aware."[65]  Courts have explained:

> Th[e *de facto* officer] doctrine distinguishes between collateral attacks wherein a plaintiff challenges government action on the ground that the official who took the action was improperly in office, . . . and direct attacks wherein the plaintiff challenges the qualifications of the officer, rather than the actions taken.  The doctrine holds that collateral attacks pose too great

---

from § 3348 by § 3348(e)(1), the traditional de facto officer . . . defense[] remain[s] available to defend Mr. Solomon's action in issuing the complaint at issue here."). Remington seems to alter course in its Supplemental Brief, asserting that it disagrees with this reading of the FVRA.  *See* Docket 29 at 2 (Resp't Supp. Br.) ("Remington disagrees with this reading FVRA" to mean that "section 3348(e)(1) exempted NLRB General Counsel [from section 3348(d)], thus retaining the de facto officer defense," but agrees that "generally speaking" the *de facto* officer doctrine is an available defense).

[62] *Silver v. U.S. Postal Service*, 951 F.2d 1033, 1036 n.1 (9th Cir. 1991); *see also United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999), *overruled on other grounds U.S. v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (declining to apply the "ancient" doctrine).

[63] 539 U.S. 69, 72 (2003).  However, the Supreme Court declined to apply the doctrine in that case.

[64] *Ryder v. United States*, 515 U.S. 177, 180 (1995).

[65] *Roell v. Withrow*, 538 U.S. 580, 598 (2003) (quoting *Glidden Co. v. Zdanok*, 370 U.S. 530, 535 (1962)); s*ee also EEOC v. Sears, Roebuck & Co.*, 650 F.2d 14, 17 (2d Cir. 1981) ("The de facto officer doctrine was developed to protect the public from the chaos and uncertainty that would ensue if actions taken by individuals apparently occupying government offices could later be invalidated by exposing defects in the officials' titles.").

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 15 of 34

a threat that past actions of the challenged official would be subjected to wholesale invalidation and thus interfere with orderly government.[66]

Remington seems to agree with this legal framework,[67] and asserts that it is bringing a "'direct' attack on [Solomon's] qualifications to take action in a *present* pending case."[68] That is, Remington asserts that its "motion to dismiss constitutes a direct attack on Mr. Solomon's authority to initiate the underlying administrative-agency complaint, which in turn is the condition precedent to the filing of the [§] 10(j) action in this Court. This present motion is not collateral in nature."[69]

The Court disagrees that Remington's attack is a purely direct attack. Although Remington asserts that it challenges only Solomon's "qualifications" to hold the position of Acting General Counsel,[70] at its core, Remington's challenge is to the validity of the administrative complaints that Solomon issued. The allegations of those complaints were evaluated by ALJ McCarrick during hearings in late 2012 occurring over nineteen days and involving substantial witness testimony. The ALJ McCarrick Decision is now

---

[66] *Horwitz v. State Bd. of Med. Exam'rs*, 822 F.2d 1508, 1516 (10th Cir. 1987) (citing *Andrade v. Lauer*, 729 F.2d 1475, 1496-1497 (D.C. Cir. 1984)).

[67] Docket 18 at 21 (Mot.); *see also* Docket 29 at 3 (Resp't Supp. Br.) ("Remington . . . acknowledges that a 'collateral' attack on a *past* action by an invalidly appointed General Counsel is protected by the doctrine." (emphasis in original)).

[68] Docket 29 at 3 (Resp't Supp. Br.) (emphasis in original).

[69] *Id.* at 5. Petitioner asserts "[t]here is no merit to Respondent's contention . . . that the de facto officer doctrine is unavailable as a defense because that doctrine insulates officers only from collateral attack, not from direct challenge," but provides no authority that supports that argument. Docket 25 at 4 (Pet'r Supp. Br.).

[70] Solomon's tenure as Acting General Counsel ended November 4, 2013. The Petition was filed November 13, 2013, and Remington filed its answer and the motion to dismiss on December 4 and 18, respectively. Although Remington filed its motion to dismiss within a few weeks of the end of Solomon's tenure, this was nevertheless over two years after Solomon consolidated and issued the underlying administrative complaints.

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 16 of 34

pending appeal to the Board, after which it might be further appealed to a Court of Appeals. The ALJ McCarrick Decision is not on appeal to this Court. Remington's challenge before this Court to the validity of the administrative complaints is collateral because the proceeding before this Court is not a direct appeal of the ALJ's decision.

Remington concedes that it did not challenge Solomon's designation during the administrative proceedings, but asserts that the present motion and "challenge to Solomon's qualification is being raised at the first possible opportunity."[71] However, similarly situated parties have raised similar challenges before the administrative tribunal.[72] The Court does not agree that this § 10(j) proceeding was Remington's "first possible opportunity" to raise this concern. Remington's failure to promptly object to the Acting General Counsel's authority to issue the complaints, while not dispositive, weighs in favor of applying the *de facto* officer doctrine. This is particularly so where this § 10(j) proceeding is not a direct appeal of the ALJ's determination. Rather, it is for the limited purposes of determining whether preliminary injunctive relief is warranted while the ALJ's decision is before the Board for review. As such, it is collateral.

Even if this Court were to consider Remington as making a direct attack, it would fail. *Nguyen v. United States*[73] is instructive. In that case, the three-judge panel for the Ninth Circuit Court of Appeals that affirmed a criminal conviction included two Article III

---

[71]  Docket 29 at 5 (Resp't Supp. Br.).

[72]  *See Newark Elec. Corp.*, No. 03-CA-088127, 2014 NLRB LEXIS 9, at *2 n.3 (NLRB Jan. 6, 2014) (ALJ decision declines to dismiss complaint based on allegation that Acting General Counsel Solomon lacked authority); *C&G Distrib. Co.*, 359 NLRB No. 53, at *1 n.2 (2013) ("Company challenge[d] the authority of the Acting General Counsel . . . to prosecute . . . the complaint, . . . [but] similar challenges have been rejected in other cases.").

[73]  539 U.S. 69, 72 (2003).

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 17 of 34

judges and one Article IV territorial-court judge.[74]  The defendant did not challenge the composition of the circuit panel until he filed for certiorari review with the United States Supreme Court.[75]  Before the Supreme Court, the parties agreed that the circuit panel was not constituted in accordance with the applicable federal statute.[76]  The government asserted that the panel's judgment should nevertheless be left undisturbed under the *de facto* officer doctrine.[77]  But the Supreme Court declined to apply the *de facto* officer doctrine, despite the delayed challenge to the panel's composition.  The Supreme Court explained that, in cases involving judges, it has applied the doctrine where "there is a 'merely technical' defect of statutory authority."[78]  The *Nguyen* Court went on to explain that it has declined to apply the doctrine where there was a "violation[] of a statutory provision that 'embodies a strong policy concerning the proper administration of judicial business' even though the defect was not raised in a timely manner."[79]  The *Nguyen* Court concluded that the doctrine would not apply because the circuit panel designation was not just "irregular" but "impermissible"—that is, it was "the

---

[74]  *Id.* at 73-74.

[75]  *Id.* at 73.

[76]  *Id.* at 77.

[77]  *Id.*

[78]  *Id.* (discussing *Ball v. United States*, 140 U.S. 118 (1891) (applying *de facto* officer doctrine where criminal defendant failed to object to sentence imposed upon him by a district court judge from a different district temporarily assigned to sit in district where defendant was prosecuted); *McDowell v. United States*, 159 U.S. 596 (1895) (similar)); *but see Ryder*, 515 U.S. at 183 (Supreme Court declined to apply *de facto* officer doctrine, noting "[w]e think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred.").

[79]  *Nguyen*, 539 U.S. at 77-78 (discussing *Glidden*, 370 U.S. at 535).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 18 of 34

difference between an action which could have been taken, if properly pursued, and one which could never have been taken at all."[80]

Here, unlike the Article IV judge in *Nguyen*, Acting General Counsel Solomon was initially eligible to serve in the role of Acting General Counsel and would have remained eligible had he not been presidentially nominated.[81] One might argue that once Solomon was nominated, his continued performance as Acting General Counsel was impermissible, rather than irregular, but refusing to apply the *de facto* officer doctrine in this circumstance would ignore the other policy implications of the FVRA, specifically the exclusion of the NLRB General Counsel position from section 3345 through section 3348(e).[82] In addition, applying the *de facto* officer doctrine here supports the public policy underlying the NLRA, which is to encourage collective bargaining.[83] For there is no doubt that nullifying the complaints issued during Acting General Counsel Solomon's time in office many months after the ALJ has issued his decision on the ULP charges raised in those complaints would hinder the policy objectives of the NLRA.[84]

---

[80] *Id.* at 79.

[81] Remington makes several additional arguments as to why the *de facto* officer doctrine ought not to apply, but they are not compelling. For instance, it argues "the doctrine is *generally* limited to attacks raising constitutional considerations." *See* Docket 29 at 4 (Resp't Supp. Br.). But as Remington acknowledges, in *Nguyen*, the Supreme Court considered the doctrine with respect to a statutory challenge, and although the Court rejected the doctrine, it was because the Article IV judge's appointment was "impermissible," not because the case presented a statutory instead of a constitutional question.

[82] *But see* S. Rep. No. 105-250, 105th Cong., 2d Sess., at 17-20.

[83] *Cf. Nguyen*, 539 U.S. at 78.

[84] The NLRB has repeatedly expressed its view that the complaints issued by Acting General Counsel Solomon are valid. *See, e.g., Belgrove Post Acute Care Ctr.*, 359 NLRB No. 77, at *1

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 19 of 34

Because Remington brings either an impermissible collateral attack or a direct attack that fails pursuant to the *de facto* officer doctrine, the Court will deny the motion to dismiss.

## II. The Petition for Injunctive Relief.

Petitioner seeks an injunction pursuant to § 10(j) of the NLRA.

### A. Review of a § 10(j) Petition for Injunction.

Section 10(j) of the NLRA provides that, "[t]he Board shall have power, upon issuance of a complaint" charging ULPs "to petition any United States district court" within a proper district "for appropriate temporary relief or restraining order.[85] "The purpose of a § 10(j) injunction is 'to protect the integrity of the collective bargaining process and to preserve the Board's remedial power while it processes' an unfair labor practice complaint."[86] The standard for a § 10(j) preliminary injunction is the same as for any other preliminary injunction. A party must establish:

> [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.[87]

---

n.1 (2013) ("[E]ven if the appointment [of Acting General Counsel Solomon] had not been proper under the Vacancies Act, that defect would not constitute grounds for attacking the complaint. . . . [Section 3348] by its terms, is expressly and specifically inapplicable to the office of the Board's General Counsel. 5 U.S.C. § 3348(e)(1).").

[85] 29 U.S.C. § 160(j).

[86] *Frankl v. HTH Corp.*, 650 F.3d 1334, 1341 (9th Cir. 2011) (quoting *Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 459-60 (9th Cir. 1994)).

[87] *McDermott v. Ampersand Publ'g, LLC*, 593 F.3d 950, 957 (9th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council*, 129 S.Ct. 365, 374-76 (2008)).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 20 of 34

"Under the 'sliding scale' approach to preliminary injunctions observed in [the Ninth Circuit], 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'"[88] "Serious questions going to the merits and a balance of hardships that tips sharply towards the Regional Director can support issuance of a preliminary injunction, so long as the Regional Director also shows that there is a likelihood of irreparable harm and that the injunction is in the public interest."[89] Below, the Court considers the four preliminary injunction factors and concludes that each is satisfied.

### B. Likelihood of Success on the Merits.

"On a § 10(j) petition, likelihood of success is a function of the probability that the Board will issue an order determining that the unfair labor practices alleged by the Regional Director occurred and that this Court would grant a petition enforcing that order, if such enforcement were sought."[90] The Regional Director "can make a threshold showing of likelihood of success by producing some evidence to support the unfair labor practice charge, together with an arguable legal theory."[91] As this Court previously stated, "[t]he Ninth Circuit has not formally decided how much weight to give to an ALJ decision in § 10(j) proceedings."[92] But the Ninth Circuit has found

---

[88] *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (per curiam) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

[89] *Frankl*, 650 F.3d at 1355 (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135 (internal quotations and alterations omitted)).

[90] *Frankl*, 650 F.3d at 1355.

[91] *Id.* at 1356 (quoting *Miller*, 19 F.3d at 460).

[92] *Remington Lodging & Hospitality*, 842 F.Supp.2d at1196 (discussing *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1186 (9th Cir. 2011)).

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 21 of 34

"compelling" a Seventh Circuit decision concerning the degree to which a court may rely on an ALJ decision:

> The ALJ is the Board's first level decisionmaker. Having presided over the merits hearing, the ALJ's factual and legal determinations may supply a useful benchmark against which the Director's prospects of success may be weighed.[93]

At the same time, the ALJ's decision is not dispositive.[94] But where, as here, the Regional Director sought and received unanimous Board approval prior to filing the § 10(j) petition, he is owed special deference because the Board's decision to seek a preliminary injunction "might signal its future decision on the merits, assuming the facts alleged in the petition withstand examination at trial."[95]

In this case, the 80-page Decision and Order issued by ALJ McCarrick in *Remington II* details why he concluded that Remington had committed multiple ULPs in violation of the NLRA.[96] ALJ McCarrick concluded that Remington violated NLRA section 8(a)(1) by:

- Maintaining and enforcing various rules in the employee handbook;

- Interrogating employees about union activities;

- Engaging in surveillance of employees' union activities;

- Creating the impression that employees' union activities were under surveillance;

- Coercing employees regarding testimony at an NLRB hearing;

---

[93] *Id.*

[94] *Id.* at 1196 (citing *McDermott*, 593 F.3d at 964).

[95] *Small*, 661 F.3d at 1187.

[96] *See* Docket 3-19 (Pet. Ex. 13: ALJ McCarrick Decision).

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 22 of 34

- Telling employees to remove union buttons;

- Prohibiting off-duty employees from disturbing union literature on hotel property; and

- Threatening to call the police on employees or have employees arrested because they were engaged in union activity.[97]

ALJ McCarrick concluded that Remington violated NLRA section 8(a)(3) by:

- Disciplining, discharging, and changing the schedules of various employees.[98]

ALJ McCarrick concluded that Remington violated NLRA section 8(a)(4) by:

- Discharging employees Dexter Wray and Yanira Escalante Medrano because they gave testimony to the Board in connection with ULP proceedings.[99]

ALJ McCarrick concluded that Remington violated NLRA section 8(a)(5) by:

- Taking various actions unilaterally and without bargaining with the union, and by refusing to provide the Union with information necessary for and relevant to the Union's performance of its collective bargaining duties.[100]

The petition for injunctive relief asserts that Remington committed approximately forty ULPs.[101]   Remington did not independently respond to the majority of the allegations in its briefing to this Court, but focuses its argument on its assertion that the Court should deny injunctive relief with respect to employees Dexter Wray, Elda Buezo, and Yanira Medrano.[102]

---

[97] *Id.* at 73-74.

[98] *Id.* at 74-75.

[99] *Id.* at 75.

[100] *Id.* at 75-76.

[101] Docket 1 at 6-7 (Pet.).

[102] Docket 17 at 10-13 (Pet. Opp'n).

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 23 of 34

As the Court expressed at oral argument, for purposes of preliminary injunctive relief, the Court will not reweigh the evidence before the ALJ or revisit the extensive factual findings he reached based on nineteen days of hearings and the testimony of numerous witnesses. The Court does not find compelling Remington's generalized assertion that Petitioner is unlikely to succeed on the merits, nor its specific arguments concerning employees Wray, Buezo, and Medrano. The Court has thoroughly reviewed the ALJ McCarrick Decision and finds that it demonstrates that Petitioner has "produc[ed] some evidence to support the unfair labor practice charge[s], together with . . . arguable legal theor[ies]."[103] In addition, the September 27, 2013 unanimous authorization from a fully confirmed Board to institute § 10(j) proceedings concerning *Remington II* further supports a finding that Petitioner will likely succeed on the merits before that Board.[104]

### C. Irreparable Harm.

To obtain a preliminary injunction, a petitioner "must establish that irreparable harm is likely, not just possible."[105] In the context of the NLRA, "irreparable injury is established if a likely unfair labor practice is shown along with a present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later

---

[103] *Frankl*, 650 F.3d at 1356 (quoting *Miller*, 19 F.3d at 460).

[104] *Small*, 661 F.3d at 1187; *see also* Docket 3-26 (Pet. Ex. 20: Bd. Authorization for § 10(j) Proceedings, dated Sept. 27, 2013).

[105] *Frankl*, 650 F.3d at 1355 (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1131).

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 24 of 34

relief."[106]  That is, "permitting an alleged unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority is irreparable harm."[107]

### 1.  Violations of Section 8(a)(5) are likely to cause irreparable harm.

The Ninth Circuit has explained that with respect to "violations of § 8(a)(5), continuation of that unfair labor practice, failure to bargain in good faith, has long been understood as likely causing an irreparable injury to union representation."[108]  This is because, "[a]s time passes, the benefits of unionization are lost and the spark to organize is extinguished.  The deprivation to employees from the delay in bargaining and the diminution of union support is immeasurable."[109]  In addition, the Ninth Circuit has concluded that the "discharge of active and open union supporters risks a serious adverse impact on employee interest in unionization and can create irreparable harm to the collective bargaining process."[110]

Here, Petitioner alleges and ALJ McCarrick has found multiple violations of Section 8(a)(5).  For example, ALJ McCarrick concluded that the Union representatives

---

[106]  *Id.* at 1362.

[107]  *Id.*

[108]  *Id.*; *see also Small*, 661 F.3d at 1191.

[109]  *Frankl*, 650 F.3d at 1362-63 (quoting *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1573 (7th Cir. 1996)); *see also Small*, 661 F.3d at 1191-92 (Refusal to bargain in good faith results in irreparable harm because it reduces the possibility that the union and employer will effectively negotiate a collective bargaining agreement; because unions provide non-economic benefits, such as greater job security, and employees cannot be fully compensated for the loss of those benefits through a forward-looking NLRB order; because "a failure to bargain in good faith threatens industrial peace"; and because "a delay in bargaining weakens support for the union.").

[110]  *Frankl*, 650 F.3d at 1363 (quoting *Pye v. Excel Case Ready*, 238 F.3d 69, 74 (1st Cir. 2001)).

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 25 of 34

were denied access to Union employees at the Hotel.[111]  This type of violation deprives employees of the benefits of the Union and supports a finding of a likelihood of irreparable harm.  Petitioner has also established a likelihood of irreparable harm by demonstrating that certain employees who were disciplined, discharged, or otherwise negatively affected by changed Hotel policies played active roles in the Union.  For instance, Wray, Buezo, and Medrano all publicly supported the Union and testified in *Remington I*, and ALJ McCarrick found that all three were terminated as a result of ULPs.[112]  Remington's disciplining of active Union supporters in this manner is likely to damage the ability of the Union to represent its members and engage in collective bargaining on their behalf, and thus demonstrates a likelihood of irreparable harm.

### 2. Delay is not determinative as to whether the Court finds irreparable harm.

In evaluating irreparable harm, a court may consider the delay between the commission of ULPs and the filing of a complaint or an injunction.  On this point, Remington cites the Ninth Circuit's 2010 decision in *McDermott v. Ampersand Publishing, LLC*.[113]  In *McDermott*, the Regional Director sought preliminary injunctive relief, requiring a newspaper publisher to reinstate employees it allegedly had discharged for union activity.  The district court denied injunctive relief, in part because

---

[111]  *See, e.g.,* Docket 3-19 at 24 (Pet. Ex. 13: ALJ McCarrick Decision) ("unilateral discontinuance of the use of preference sheets in scheduling bargaining unit employees violated Section 8(a)(5)"); Docket 3-19 at 57, 58 (Respondent violated Section 8(a)(1) and (5) when it unilaterally barred Union representatives from Hotel on April 21, 2010 and July 2, 2010); Docket 3-19 at 61 (Respondent violated Section 8(a)(1) and (5) by abandoning use of seniority in assigning work at hotel).

[112]  Docket 3-19 at 33-39 (Pet. Ex. 13: ALJ McCarrick Decision) (Wray); Docket 3-19 at 41-44 (Buezo); Docket 3-19 at 39-41 (Medrano).

[113]  Docket 17 at 5-6 (Pet. Opp'n) (discussing *McDermott*, 593 F.3d 950).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 26 of 34

the case involved a newspaper and First Amendment rights, which subjected the request for injunctive relief to a heightened standard, but also because the Regional Director could not demonstrate irreparable harm due to substantial delay. In that case, the employees had been terminated in October 2006 and early 2007, and the Regional Director sought § 10(j) injunctive relief in March 2008.[114] The Ninth Circuit affirmed, explaining that although "delay by itself is not a determinative factor in whether the grant of interim relief is just and proper," delay is significant "if the harm has occurred and the parties cannot be returned to the status quo or if the Board's final order is likely to be as effective as an order for interim relief."[115] The Ninth Circuit found that the final Board order would likely be as effective as interim relief in that case in part because the primary injunctive relief requested was reinstatement of the employees who had been terminated some thirteen to seventeen months prior to the request for injunctive relief.[116]

In contrast, in *Frankl v. HTH Corporation*, which involved a similarly lengthy delay between the filing of the first ULP charges and the filing of the § 10(j) petition, the Ninth Circuit affirmed the district court's grant of injunctive relief.[117] The Ninth Circuit reiterated *McDermott*'s holding that delay is not determinative, explaining that delay is

---

[114] *McDermott*, 593 F.3d at 965 (district court found "little basis to believe, given the long delay, that an interim [injunctive] order at this point will provide any genuine reassurance to employees beyond that provided by a final Board order that unfair labor practices committed by [Respondent] will be timely remedied").

[115] *Id.* at 964, 965.

[116] *Id.* at 965; *see also id.* at 966 (Clifton, J. dissenting) ("The injunction here only seeks reinstatement for terminated employees. Period.").

[117] *Frankl*, 650 F.3d 1334.

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 27 of 34

often the result of the postponement in filing § 10(j) proceedings until after an ALJ decision because the issuance of the ALJ decision assists district court judges.[118] *Frankl* distinguished *McDermott*, both because *McDermott* involved special First Amendment interests, and also because "the record [in *Frankl*] provided specific support for the conclusions that there would likely be irreparable harm beyond that which could be remedied once the Board had ruled, and that interim relief was more likely to curb the ongoing unfair labor practices than subsequent relief."[119]

The current petition bears more similarity to *Frankl* than *McDermott.* First, unlike *McDermott*, there are no special First Amendment interests at issue in these proceedings. Second, in contrast to the *McDermott* injunction request, which primarily sought reinstatement of terminated employees, and more like *Frankl*, in this case, the Regional Director seeks varied and extensive forms of injunctive relief.[120] For instance, Petitioner requests that Remington be required to, at the request of the Union, rescind unilateral changes made to employees' terms and conditions of employment, concerning sick leave, staffing, and scheduling policies. Injunctive relief at this time would be more likely to curb any currently ongoing ULPs than Board action at some point in the future, particularly as both the Ninth Circuit and Congress have recognized that the Board process is often lengthy and to the disadvantage of those involved in

---

[118] *Id.* at 1363 (This "ma[kes] the District Court's task in evaluating the propriety of interim relief much easier, and much more likely to be carried out accurately.").

[119] *Id.* at 1364.

[120] Docket 1 at 10-11 (Pet.). Petitioner notes that where "certain unfair labor practices are no longer ongoing, whether due to the Initial Injunction or otherwise, Petitioner only seeks that Respondent be enjoined and restrained from further action." *See* Docket 21 at 8 n.2 (Pet. Reply).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 28 of 34

collective bargaining.[121]    And a determination by the Board in this case might be particularly delayed given the recent disputes over the validity of actions taken by the Board due to the quorum issue.[122]    Thus, despite the delay between the alleged ULPs and the Regional Director's petition for § 10(j) injunctive relief in this case, this Court finds that Petitioner has demonstrated a likelihood of irreparable harm if preliminary relief is not granted at this time.

### D.  Balance of the Equities.

In balancing the equities, "the district court must take into account the probability that declining to issue the injunction will permit the alleged unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority."[123]

Remington had initially asserted that an injunction is unnecessary here because the Judge Burgess Injunction in relation to *Remington I* "has already granted the relief sought by the present petition."[124]    But after supplemental briefing, the parties now agree that the Judge Burgess Injunction lapsed upon issuance of the Board's April 2013 decision in that proceeding.[125]    Thus, that injunction is now active only with respect to the four ULPs addressed in *Remington II*.[126]

---

[121]  *Frankl*, 650 F.3d at 1340 (the administrative process may take years, but "time is usually of the essence in labor disputes") (internal quotation omitted)).

[122]  *See* note 42.

[123]  *Small*, 661 F.3d at 1196 (quoting *Frankl*, 650 F.3d at 1365).

[124]  Docket 17 at 7 (Pet. Opp'n) (italics removed).

[125]  *See* Docket 25 at 5-6 (Pet'r Supp. Br.); Docket 29 at 7 (Resp't Supp. Br.) ("Remington concedes . . . that a 10(j) injunction lapses by operation of the Act, upon issuance of the Board decision.").

[126]  *See* Docket 25 at 7 (Pet'r Supp. Br.) (listing four ULPs).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 29 of 34

In its supplemental briefing, Remington asserts, however, that injunctive relief is nevertheless unnecessary because the Board's affirmation of the ALJ Meyerson Decision is now pending review before a Court of Appeals, and that during the pendency of that appellate review, the Board may seek injunctive relief from a Court of Appeals through 29 U.S.C. § 160(e) (§ 10(e)).[127] Even assuming that this could afford the Petitioner complete relief with respect to *Remington II*, there is no indication in the record that this relief has been sought. Thus, it does not make the relief sought in this case unwarranted.

### E. Public Interest.

"[O]rdinarily when . . . the [Regional] Director makes a strong showing of likelihood of success and of likelihood of irreparable harm, the [Regional] Director will have established that preliminary relief is in the public interest."[128] Here, Petitioner has made the requisite strong showing. Accordingly, a preliminary injunction is in the public interest.

### CONCLUSION

Based on the foregoing, Remington's Motion to Dismiss at Docket 18 is **DENIED,** and the Petition for a § 10(j) Preliminary Injunction at Docket 1 is **GRANTED.** The terms of the Preliminary Injunction are set forth in the following Order.

//

//

---

[127] *See* Docket 29 at 7 (Resp't Supp. Br.). As noted above, there is some dispute concerning which Court of Appeals has jurisdiction. *See* note 23.

[128] *Small*, 661 F.3d at 1197 (quoting *Frankl*, 650 F.3d at 1365).

3:13-cv-00213-SLG*, Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 30 of 34

# ORDER

The Petition for Injunctive Relief filed by Petitioner Ronald K. Hooks, Regional Director for Region 19 of the National Labor Relations Board, for and on behalf of the Board, against Remington Lodging & Hospitality, LLC, d/b/a The Sheraton Anchorage, pursuant to § 10(j) of the National Labor Relations Act (Docket No. 1) is **GRANTED. IT IS HEREBY ORDERED** that, pending the final disposition by the National Labor Relations Board of the matters involving the Parties to this action now pending before it:

1. Respondent, Remington Lodging & Hospitality, LLC, d/b/a The Sheraton Anchorage, and its officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with those persons, are hereby enjoined and restrained from:

   a. Maintaining and enforcing the following access rules in its employee handbook:

      i. Employees "agree not to return to the Hotel before or after [their] working hours without authorization from [their] manager;" and

      ii. Employees "must confine their presence in the Hotel to the area of their job assignment and work duties. It is not permissible to roam the property at will or visit other parts of the Hotel, parking lots, or outside facilities without permission of the immediate Department Head;"

   b. Maintaining and enforcing the following solicitation and distribution rule in its employee handbook:

      i. "Distribution of any literature, pamphlets, or other materials in a guest or work area is prohibited … Solicitation of guests by associates at any time for any purpose is also inappropriate;"

   c. Interrogating employees about their Union activities;

   d. Engaging in surveillance of its employees' Union activities;

   e. Creating the impression that its employees' Union activities are under surveillance;

   f. Coercing its employees regarding their testimony at an NLRB hearing;

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 31 of 34

g.  Telling employees to remove their Union buttons;

h.  Prohibiting off-duty employees from distributing Union literature on Hotel property;

i.  Threatening to call the police on employees or have its employees arrested because they were engaged in Union activity;

j.  Disciplining employees because of their Union activities;

k.  Issuing employees poor evaluations because of their Union activities;

l.  Changing schedules of employees because of their Union activities or support;

m.  Decreasing the hours or shifts of employees because of their Union activities or support;

n.  Increasing the number of scheduled shifts for banquet employees who do not support the Union to discourage employees from engaging in Union activities;

o.  Discharging employees because of their protected concerted and/or Union activities, and/or their participation in Board processes;

p.  Failing and refusing to bargain in good faith with the Union by unilaterally:

    i.  banning Union Representative Daniel Esparza from the Hotel;

    ii.  eliminating banquet employees' scheduling preference sheets;

    iii.  terminating its practice of posting banquet employee schedules by noon on Fridays;

    iv.  changing the sick leave policy in the parties' expired collective-bargaining agreement;

    v.  subcontracting bargaining unit work;

    vi.  reducing banquet server compensation by allocating a portion of their gratuities to pay for the services of third party banquet servers;

    vii.  changing banquet server and set up duties;

    viii.  changing banquet server and set up staffing and scheduling; and

    ix.  failing and refusing to provide the Union with information necessary for and relevant to the Union's performance of its duties as the

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 32 of 34

exclusive collective-bargaining representative of bargaining unit employees; and

q. In any other manner interfering with, restraining, or coercing employees in the exercise of rights guaranteed by § 7 of the Act.

2. Respondent, Remington Lodging & Hospitality, LLC, d/b/a The Sheraton Anchorage, and its officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with those persons, are hereby directed to:

a. Within five (5) days of this Order, offer to reinstate Dexter Wray, Yanira Medrano, and Elda Buezo to their former positions along with their seniority and all other rights and privileges;

b. Within fourteen (14) days of this Order, remove from its files all references to the discharges of Dexter Wray, Yanira Medrano, and Elda Buezo and notify them in writing that this has been done and that the discharges will not be used against them in any way;

c. Within fourteen (14) days of this Order, remove from its files all references to the written disciplines and poor evaluations issued to Fay Gavin, Ana Rodriguez, Audelia Hernandez, Shirley Grimes, and Dexter Wray and notify them in writing that this has been done and that these will not be used against them in any way;

d. Within fourteen (14) days of this Order, remove from its files all references to disciplines issued as a result of its unilateral changes made in the terms and conditions of their employment;

e. At the request of the Union, rescind the unilateral changes made in its employees' terms and conditions of employment implemented in or about July 2010, including: changing its sick leave policy from that contained in the expired collective bargaining agreement;

f. At the request of the Union, rescind the unilateral changes made in its employees' terms and conditions of employment implemented in or about October 2011, including: changing banquet server and set up job duties, and changing banquet server and set up staffing and scheduling;

g. Immediately post copies of this Order for no fewer than 60 days, at all locations where Respondent's notices to employees are customarily posted; maintain such notices free from obstructions or defacements pending the Board's administrative proceeding; and grant to agents of the Board reasonable access to Respondent's Hotel to monitor compliance with this posting requirement;

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 33 of 34

h. Within ten (10) days after entry of this Order, hold a mandatory meeting or meetings for employees, scheduled to ensure the widest possible attendance during regular business hours and on Respondent's premises, at which the Order is to be read in English and Spanish to the employees by a responsible management official or, at Respondent's option, a Board Agent in a responsible official's presence; and

i. Within twenty (20) days of the issuance of this Order, file with the District Court and serve a copy upon Petitioner, a sworn affidavit from a responsible Respondent official which describes with specificity how Respondent has complied with the terms of this Order, including the exact locations where Respondent posted the materials required under this Order.


DATED at Anchorage, Alaska, this 18th day of March 2014.

/s/ Sharon L. Gleason
United States District Judge

3:13-cv-00213-SLG, *Hooks v. Remington Lodging & Hospitality, LLC*
Decision and Order on Petition for Injunctive Relief and Motion to Dismiss
Page 34 of 34